E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KELSEY A. STIMSON (Cal. Bar No.: Pending)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8230
    Facsimile: (213) 894-6269
    Email:    kelsey.stimson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 24-101-PA-2 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TEMUR AKHMEDOV |
| v. | |
| TEMUR AKHMEDOV, | |
| Defendant. | |

1.    This constitutes the plea agreement between TEMUR AKHMEDOV ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

    a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count three of the indictment in United States v. TEMUR AKHMEDOV, CR No. 24-101-PA-2,

which charges defendant with bank fraud, in violation of 18 U.S.C. § 1344(2).

   b. Not contest facts agreed to in this agreement.

   c. Abide by all agreements regarding sentencing contained in this agreement.

   d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

   e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

   f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

   g. Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

   h. Recommend to the Court in writing in his sentencing position as well as orally at the sentencing hearing that defendant be sentenced to a term of imprisonment of 24 months or more; and not seek, argue, or suggest in any way, either orally or in writing, that the Court impose a term of imprisonment below 24 months.

   i. That any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

j.  Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

k.  Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

l.  Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

## THE USAO'S OBLIGATIONS

3.  The USAO agrees to:

a.  Not contest facts agreed to in this agreement.

b.  Abide by all agreements regarding sentencing contained in this agreement.

c.  At the time of sentencing, move to dismiss the remaining counts of the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.  At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to

3

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in count three, that is, bank fraud in violation of Title 18, United States Code, Section 1344(2), the following must be true: (1) the defendant knowingly carried out a scheme or plan to obtain money or property from a financial institution by making false statements or promises; (2) the defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) the defendant acted with the intent to defraud; and (5) the financial institution was federally insured.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), as charged in count three, is: 30 years' imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may

order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution as to defendant is approximately $45,140, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a

1 federal crime for a convicted felon to possess a firearm or
2 ammunition.  Defendant understands that the conviction in this case
3 may also subject defendant to various other collateral consequences,
4 including but not limited to revocation of probation, parole, or
5 supervised release in another case and suspension or revocation of a
6 professional license.  Defendant understands that unanticipated
7 collateral consequences will not serve as grounds to withdraw
8 defendant's guilty plea.

9     9.   Defendant and his counsel have discussed the fact that, and
10 defendant understands that, if defendant is not a United States
11 citizen, the conviction in this case makes it practically inevitable
12 and a virtual certainty that defendant will be removed or deported
13 from the United States.  Defendant may also be denied United States
14 citizenship and admission to the United States in the future.
15 Defendant understands that while there may be arguments that
16 defendant can raise in immigration proceedings to avoid or delay
17 removal, removal is presumptively mandatory and a virtual certainty
18 in this case.  Defendant further understands that removal and
19 immigration consequences are the subject of a separate proceeding and
20 that no one, including his attorney or the Court, can predict to an
21 absolute certainty the effect of his conviction on his immigration
22 status.  Defendant nevertheless affirms that he wants to plead guilty
23 regardless of any immigration consequences that his plea may entail,
24 even if the consequence is automatic removal from the United States.

FACTUAL BASIS

26    10.  Defendant admits that defendant is, in fact, guilty of the
27 offense to which defendant is agreeing to plead guilty.  Defendant
28 and the USAO agree to the statement of facts provided in Appendix A

and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Loss Amount of More than $40,000: | +6 | U.S.S.G. § 2B1.1(b)(1)(D) |
| Substantial Financial Hardship to 5+ Victims: | +4 | U.S.S.G. § 2B1.1(b)(2)(B) |
| Use of Authentication Feature: | +2 | U.S.S.G. § 2B1.1(b)(11) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |

Total Offense Level:          16

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 25 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

13.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.  Except as set forth in paragraph 2(h), defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

    d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e. The right to confront and cross-examine witnesses against defendant.

    f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

    h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

16. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to

appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

<u>UNLIMITED NON-MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

17. Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $45,140; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the

applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

19. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

20. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

21. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

22. Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

23. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing

occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES</u>

24. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

25. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services

Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

26. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

27. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//

| | |
|---|---|
| PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING | |

28. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____  June 29, 2024
KELSEY A. STIMSON           Date
Assistant United States Attorney

_____  06.29.2024
TEMUR AKHMEDOV              Date
Defendant

_Drew Havens_              6/29/2024
DREW HAVENS                 Date
ANNICK JORDAN
Attorneys for Defendant
TEMUR AKHMEDOV

15

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____      06.29.2024
TEMUR AKHMEDOV                        Date
Defendant

16

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am TEMUR AKHMEDOV's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a  guilty plea pursuant to this agreement.

*Drew Havens*                                              6/29/2024

DREW HAVENS                                              Date
ANNICK JORDAN
Attorneys for Defendant
TEMUR AKHMEDOV

APPENDIX A

Beginning on an unspecified date and continuing through at least on or about August 31, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant and his co-schemers, including co-defendant Bakhtiyar Kamardinov ("Kamardinov"), each aiding and abetting the other, knowingly and with intent to defraud, devised and executed a scheme to obtain moneys, funds, assets, and other property owned by and in the custody and control of financial institutions, including Bank of America, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts. The financial institutions were at all relevant times insured by the Federal Deposit Insurance Corporation.

The fraudulent scheme operated, and was carried out, in substance, in the following manner:

    a. Defendant and Kamardinov, themselves or working in concert with others, installed skimming devices and pinhole cameras at automated teller machines ("ATMs"), including at Bank of America ATMs, to surreptitiously record the account information and corresponding personal identification numbers ("PINs") of victim bank customers.

    b. These accounts were California Employment Development Department ("EDD") accounts, which were utilized by victim bank customers to obtain benefits intended for unemployed California residents.

    c. Defendant and Kamardinov, themselves or working in concert with others, then "cloned" the stolen account information and PINs onto prepaid credit cards or gift cards by altering the

1  information on those cards' magnetic stripes, or they would obtain
2  cloned cards that had been re-encoded with EDD account information.
3          d.   Defendant and Kamardinov, and others, then used the
4  cloned EDD cards, along with the corresponding stolen PIN numbers and
5  personal identifying information, to steal money from the financial
6  institutions and the victim bank customers by conducting fraudulent
7  cash withdrawals, including of EDD benefits.  In doing so, defendant
8  and Kamardinov falsely represented to the bank that they were the
9  account holder and were otherwise an authorized user of the card, and
10 concealed that the withdrawals defendant and Kamardinov made with the
11 re-encoded EDD cards were made without the authorized user's consent.
12 Defendant admits that these representations and omissions were
13 material to the banks.
14      For example, and not in any way intending to limit the scope of
15 defendant's offense conduct, in furtherance of the scheme, on or
16 about the following dates, in Los Angeles County, within the Central
17 District of California, and elsewhere, defendant knowingly and
18 intentionally used stolen account information and corresponding PINs
19 to make the following fraudulent withdrawals:  (i) on August 23,
20 2021, defendant used an EDD card issued to A.P. to withdraw $1,000 at
21 a Bank of America ATM in Van Nuys, California; (ii) on August 23,
22 2021, defendant used an EDD card issued to S.A. to withdraw $1,000 at
23 a Bank of America ATM in Van Nuys, California; and (iii) on August
24 23, 2021, defendant used an EDD card issued to A.V. to withdraw
25 $1,000 at a Bank of America ATM in Van Nuys, California.  In so
26 doing, defendant knowingly possessed and used, without lawful
27 authority, a means of identification that defendant knew belonged to
28 another real person, namely, the EDD account number and PIN of victim

A.P., during and in relation to the above-referenced $1,000 fraudulent withdrawal on August 23, 2021.

In total, through their scheme, defendant, Kamardinov, and others known and unknown, conducted at least 47 fraudulent transactions, withdrawing a total of at least approximately $45,140 in funds from EDD accounts belonging to no fewer than 37 account holders.  Defendant withdrew those funds without the victims' authorization and with the intent to defraud Bank of America of funds within its custody and control.

Additionally, when defendant was arrested on August 31, 2021, he and Kamardinov possessed in the vehicle that they were driving approximately 308 cloned cards, all of which contained account information belonging to other people and at least 120 of which linked to EDD accounts that had been fraudulently accessed.  Also in the vehicle were four bank deposit receipts from August 23, 2021, with account numbers matching the accounts encoded on four of the cloned cards recovered from the vehicle.  Bank of America surveillance of the transactions reflected in the bank deposit receipts showed Kamardinov making two withdrawals and defendant making one withdrawal.

Defendant admits that these fraudulent withdrawals caused substantial financial hardship to at least five of the victims, including P.F.; J.R.; F.B.; A.V.; and L.M.